Estate of E. L. Brannon, Deceased, Laura H. Brannon, Executrix v. Commissioner. Laura H. Brannon v. Commissioner.
Estate of E. L. Brannon v. Commissioner
Docket Nos. 7151, 7152.
United States Tax Court
1947 Tax Ct. Memo LEXIS 261; 6 T.C.M. (CCH) 334; T.C.M. (RIA) 47081; March 28, 1947
*261 Harold E. Prudhon, Esq., 510 W. Sixth St., Los Angeles 14, Calif., for the petitioner. Earl C. Crouter, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: Respondent determined a deficiency in the income tax of decedent, E. L. Brannon, for the taxable year January 1 to August 13, 1942, in the amount of $10,839.28. Respondent also determined a deficiency in the income and Victory tax of decedent's widow, Laura H. Brannon, for the taxable year ending December 31, 1943, in the amount of $2,171.53. The questions are (1) whether respondent correctly determined that decedent received certain fees, commissions or bribes during 1942 constituting income and, if so, the amount thereof, and (2) if decedent did receive such income what part of it, if any, constitutes the community share of his widow. The returns were filed with the collector of internal revenue for the sixth district of California. The cases were consolidated at the hearing. Findings of Fact Decedent died August 13, 1942. During 1942 until his death decedent was employed as a superintendent of construction by the McNeil Construction Company. In such capacity decedent was *262 connected with the erection of a magnesium plant for the Federal government near Las Vegas, Nevada. His salary was $225 a week. Decedent more particularly superintended excavation and the movement of earth. Heavy equipment, such as trucks, tractors and other more specialized equipment, was used in this work. The McNeil Construction Company rented much of this equipment from others as current requirements indicated. Decedent's position with McNeil was such that he was, in general, able to have such equipment rented by McNeil from persons or companies designated by him. During the term of a lease decedent could also control the character of the maintenance accorded the equipment involved. For these reasons decedent was able to and customarily did demand and receive payments from persons or companies desirous of having their equipment rented by McNeil. These payments generally amounted to approximately 10 per cent of the gross rental paid by McNeil. In accordance with this practice D. A. Dunbar, on behalf of R. E. Hazard & Sons, paid certain amounts to the decedent during 1942. The usual procedure was as follows: Checks were drawn by R. E. Hazard & Sons in favor of D. A. Dunbar who *263 cashed them and delivered the cash to decedent. Checks were thus drawn on the dates indicated in the following amounts: December 3, 1941
$ 500
December 15, 1941
500
January 27, 1942
500
February 18, 1942
1,000
February 20, 1942
500
March 13, 1942
1,500
April 4, 1942
1,500
May 14, 1942
1,000
June 5, 1942
1,000
July 2, 1942
1,000
Total
$9,000
Similarly Ralph O. Dixson, a contractor, paid decedent by checks the following amounts: January 26, 1942
$ 3,044.16
February 18, 1942
4,412.75
May 12, 1942
4,999.24
Total
$12,456.15
During 1942 McNeil did business with Crook Company, Belyea Truck Company and Doty Bros. in connection with the magnesium plant construction job. These companies leased to McNeil earth moving equipment. Laura, as executrix of decedent's estate, filed an income tax return on behalf of decedent for the taxable year January 1 to August 13, 1942, reporting, among other items, $7,198.72 as income from salary. Laura individually filed an income tax return for 1942 reporting only the amount of $675 under item 10. Laura individually filed an income tax return for 1943 reporting as income the amount of $652.55 as *264 executrix's commissions and $125 as rent or royalty. Respondent determined that decedent had additional unreported income for the period January 1 to August 13, 1942, in the amount of $22,465.97 from commissions or fees. Respondent determined that Laura had additional unreported income for 1943 in the amount of $9,572.07. Of this latter amount respondent determined that $7,997.07 and $1,575 represented, respectively, her community share of decedent's commissions or fees and his salary. The deficiency determined against Laura for 1943 is derived from the situation prevailing in 1942 because of the "forgiveness" feature of the 1943 law. The following schedule taken from the revenue agent's report illustrates the method of respondent's computation: Division of Income
Laura H.
Total
E. L. Brannon
Brannon
Salary - McNeil Construction Co. 1/1 to 4/15
$ 3,150.00
$ 1,575.00
$ 1,575.00
Salary - McNeil Construction Co. 4/15 to 8/13
4,048.72
4,048.72
Commissions Received: From Ralph O. Dixson
Date Received: 1/26/42
3,044.16
1,522.08
1,522.08
2/21/42
4,412.75
2,206.38
2,206.38
5/12/42
4,999.24
4,999.24
From R. E. Hazard & Sons
Date Received: 1/ 1/42
500.00
250.00
250.00
1/ 5/42
500.00
250.00
250.00
1/27/42
500.00
250.00
250.00
2/18/42
1,000.00
500.00
500.00
2/20/42
500.00
250.00
250.00
3/15/42
1,500.00
750.00
750.00
4/ 4/42
1,500.00
750.00
750.00
5/14/42
1,000.00
1,000.00
6/ 5/42
1,000.00
1,000.00
7/ 2/42
1,000.00
1,000.00
From Crook Company
Date Received: 4/ 2/42
485.69
1,035.98
1,035.98
4/ 2/42
1,586.27
5/29/42
1,071.65
1,071.65
Mr. Belyea, Belyea Truck Co.
Date Received: May 1942
5,000.00
5,000.00
Doty Bros. Contractors
Date Received: 1/20/42
234.00
117.00
117.00
2/20/42
231.28
115.64
115.64
4/20/42
670.00
670.00
5/20/42
164.00
164.00
7/20/42
1,139.00
1,139.00
Totals
$39,236.76
$29,664.69
$ 9,572.07
Total income of taxpayer from salary and commissions January 1 to August 13,
per schedule above
$29,664.69
Amount reported per return
7,198.72
Increase accounted for
$22,465.97
*265 The above schedule indicates that respondent treats decedent's income as community up to and including April 15, 1942, but not thereafter. April 15, 1942, is the date on which Laura acknowledged before a notary public a property settlement agreement between herself and decedent dated March 13, 1942, and acknowldged by decedent April 10, 1942. Laura and decedent separated in November, 1941, and did not thereafter live together. On May 13, 1942, Laura obtained an interlocutory decree of divorce from decedent. The property settlement agreement, after providing for certain payments by decedent to Laura and the minor child, provided that: It is further understood and agreed that all property of any kind and every kind or nature, both real and personal, heretofore and/or hereafter received or acquired by either of the parties hereto shall be and forever remain the sole and separate property of the party so receiving or acquiring the same, free and clear of all rights or claims of the other party hereto and with full right and power to grant, sell, convey, assign and deal with the same as though each of the parties hereto were sole and single. Opinion We have found as facts that decedent *266 received certain amounts in fees during 1942 from R. E. Hazard & Sons and Dixson. In addition to these amounts respondent has determined that decedent received further amounts in a similar fashion from Crook Co., Belyea Truck Co., and Doty Bros., as shown in agent's schedule set out in the findings of fact. These determinations are presumptively correct and petitioner herein has the burden of proving them erroneous. Petitioner has not sustained this burden. Petitioner introduced no evidence of any kind to prove that decedent did not receive the amounts in question. Petitioner did not introduce the testimony of any witness connected with Crook Co., Belyea Truck Co. or Doty Bros., which would appear to have been the obvious procedure under the circumstances. There is no explanation for this failure. These companies did business with McNeil during 1942 of a kind similar to that done by Hazard and Dixson. It is not unreasonable to suppose that decedent exacted the same type of fee from every one. This assumption is the basis of respondent's determination and in the absence of any proof to the contrary we think the determination must be sustained and we so hold. Petitioner contends alternatively *267 that even if the amounts in question were received by decedent such amounts do not constitute income but were gifts. There is no merit in this contention. From the facts as found it is apparent that the amounts were paid to decedent as consideration for his offices in obtaining business for the persons or companies concerned. The amounts in question were not gifts but constituted compensation for services rendered and as such represent income. Having concluded that respondent's determination with respect to the amounts received by decedent as fees in 1942 must be sustained and that such amounts constituted income, it next becomes necessary to determine what part thereof was attributable to Laura as her community share. This determination depends on the effective date of the property settlement agreement. Both parties agree that after the effective date of such agreement, decedent's income was his separate property. Petitioner contends that the date of execution as evidenced by the date borne on the agreement, i.e., March 13, 1942, represents the effective date. Respondent, on the other hand, has taken the date to be April 15, 1942, being the date of final acknowledgment by Laura. *268 In our opinion the agreement became effective when executed and by its terms it was executed March 13, 1942. We are not troubled by the fact that Laura could not recall on the witness stand when she and decedent signed the agreement. The instrument bears the date of execution and we accept it as determinative for present purposes. The acknowledgment of a property settlement pursuant to a separation agreement is not essential in California to validity. Sections 159 and 160 of the Civil Code of California (1941, Deering) which authorizes such agreements do not require acknowledgment. Nor does section 1161, ibid, generally require acknowledgment except for recordation purposes. In fact, in California an oral agreement is sufficient to effect the community or separate character of property between spouses. See cases cited in footnote 58, Mertens Law of Federal Income Taxation, section 19.22 See also Estate of Joe Crail, 46 B.T.A. 658. We therefore conclude and hold that until March 13, 1942, decedent's earnings constituted community property but that on and after such date his earnings were separate property. It follows that only one-half of such earnings as decedent realized *269 up to March 13, 1942, can be attributed to Laura as her community share. Decisions will be entered under Rule 50.